# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| Jorge Enrique Villa,<br>Petitioner<br>-vs-<br>Charles L. Ryan, et al.,<br>Respondents. | CV-11-0514-PHX-DGC (JFM)<br><br>**Report & Recommendation On Petition<br>For Writ Of Habeas Corpus** |
|---|---|

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Florence, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on March 18, 2011 (Doc. 1).  On July 15, 2011, Respondents filed their Answer (Doc. 11), and on December 5, 2011 a Supplement (Doc. 15).   Petitioner has not replied to the Answer or the Supplement, and the time to do so has now run.

The Petitioner's Petition is now ripe for consideration.   Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

In disposing of Petitioner's direct appeal, the Arizona Court of Appeals

1

1    summarized the factual background as follows:

2            Villa drove himself and three others to a liquor store. He
3    parked directly behind another car in which a passenger was seated.
     Two passengers exited Villa's car and approached the other car with
4    guns drawn. They removed the passenger of the other car at
     gunpoint and forced him into Villa's car. Villa then drove away with
5    the victim in the car.

6            The police stopped Villa's car and questioned Villa after
     informing him of his Miranda rights. Villa told Officer Tyson Miller
7    there was a gun on the rear floor of the car, and Miller also found a
     zip tie in Villa's pocket. Detective Jose Gamez interviewed Villa at
8    the Police Department and during the interview, which was
     videotaped, Villa stated the gun might have been stolen.
9
             The victim did not testify at trial because he could not be
10   located. The State called F.Y., a Phoenix Police Department
     volunteer who was on a ride-along with the officers who stopped
11   Villa, to testify about the victim's mental state. The volunteer
     testified that because he spoke Spanish, he interviewed the victim in
12   Spanish and that the victim "was terrified, scared. He was extremely
     scared about the whole situation." Through his attorney, Villa cross
13   examined the volunteer, and no statements made by the victim were
     admitted.
14

15   (Answer, Doc. 11, Exhibit M, Mem. Dec. at 2-3.) (Exhibits to the Answer are referenced

16   hereinafter as "Exhibit ___.")

17

18

19   **B. PROCEEDINGS AT TRIAL**

20       Petitioner and co-defendant Juvenal Vique were indicted on charges of

21   Kidnaping, Attempted Armed Robbery, Aggravated Assault.  (Vique was also indicted

22   on one count of weapons misconduct.)  (Exhibit A, Indictment.)

23
         Petitioner proceeded to trial and was convicted on Kidnaping and Aggravated
24
     Assault charges.  (Exhibits E and F, Verdicts.)  He was found not guilty on the charge of
25

26   attempted armed robbery.  (Exhibit M, Mem. Dec. at 4.)

27       On May 6, 2008, Petitioner was sentenced to concurrent terms of 9 and 7.5 years.
28
     (Exhibit H, Sentence.)

2

## C.  PROCEEDINGS ON DIRECT APPEAL

Petitioner filed a Notice of Appeal (Doc. J), and appointed counsel filed an Opening Brief (Exhibit K), asserting an inability to find an issue for appeal.  Petitioner then filed a *pro per* Supplemental Brief (Exhibit L), raising four issues for review:

> (1)    denial of a fair trial by admission of his statements;

> (2)    denial of his Sixth Amendment rights by hearsay testimony about the victim's statements;

> (3)    insufficient evidence; and

> (4)    denial of right to unanimous jury verdict by exclusion of jurors personal knowledge of scene.  (Exhibit L at 2.)

The Arizona Court of Appeals denied the appeal, concluding: (1) there was no abuse of discretion in admitting Petitioner's statements; (2) there was no hearsay because the testimony was limited to observations of the victim; (3) the evidence was sufficient to sustain the convictions; and (4) the trial judge properly instructed the juror that her personal experience was not evidence to be considered.  (Exhibit M.)

Petitioner filed a Petition for Review (Exhibit N), which was denied on June 2, 2010.

Petitioner filed a Petition for Writ of Certiorari (Exhibit O), which was denied on November 8, 2010.  (Exhibit R, U.S.S.Ct. Docket.)


## D.  PROCEEDINGS ON POST-CONVICTION RELIEF

Petitioner did not seek post-conviction relief.  (Petition, Doc. 1 at 4.)

3

1

## E.  PRESENT FEDERAL HABEAS PROCEEDINGS

2

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of

3

4

Habeas Corpus pursuant to 28 U.S.C. § 2254 on March 18, 2011 (Doc. 1).  Petitioner's

5

Petition asserts the following four grounds for relief:

6

(1)    **Statements** - he was denied a fair trial in violation of his Fifth and

7

Fourteenth Amendment rights thorough admission of Petitioner's recorded

8

statements;

9

(2)    **Confrontation** - a violation of his right to confront witnesses under

10

the Sixth Amendment by admission of testimony about the victim's statements;

11

12

(3)    **Insufficient Evidence** - insufficient evidence supported his

13

conviction in violation of his Fifth and Fourteenth Amendment rights, as

14

established by the not-guilty verdict on the armed robbery charge;

15

(4)    **Juror Personal Knowledge** - violation of his Fifth, Sixth, and

16

17

Fourteenth Amendment rights to a unanimous verdict as a result of the jury

18

instruction precluding a juror from considering personal knowledge of the liquor

19

store scene.

20

**Response** - On July 15, 2011 Respondents filed their Response ("Answer") (Doc.

21

11).  Respondents argue that Grounds 1, 3, and 4 were not fairly presented to the state

22

courts, are unexhausted, and are now procedurally defaulted.  Respondents argue Ground

23

24

2 is without merit.

25

**Reply** - Petitioner was given 30 days from service of the  Response to reply in

26

support of his Petition.  (Order 4/5/11 at 3.)  Petitioner did not do  so.

27

**Supplement** – On November  15,  2011,  the  Court  reached  a  preliminary

28

conclusion that grounds 1,  3,  and 4  were fairly presented  and properly exhausted.

4

Respondents were ordered to supplement their response and the record to address the merits of these claims, and Petitioner was given thirty days to reply. (Order 11/15/11, Doc. 13).

On December 5, 2011 Respondents filed their Supplemental Answer (Doc. 15), arguing: (a) Ground One merely raises a state law evidentiary claim; (b) Ground Three is without merit because evidence concerning the non-testifying victim was limited to the witness's observations, and Petitioner offers nothing to overcome the presumption of correctness applicable to the state court's findings; and (c) Ground Four is without merit because the judge properly instructed the jurors to disregard extrinsic evidence, and Petitioner offers nothing to suggest the jurors failed to do so.

Again, Petitioner did not reply.

### III. APPLICATION OF LAW TO FACTS

### A. EXHAUSTION & PROCEDURAL DEFAULT

Respondents argue that Petitioner's claims in Grounds 1, 3 and 4 were never fairly presented to the state courts, his state remedies were not properly exhausted and are now procedurally defaulted, and thus his claims are barred from habeas review.

### 1. Exhaustion Requirement

Generally, a federal habeas court has authority to review a state prisoner's claims only if available state remedies have been exhausted. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c). When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim. *Cartwright v. Cupp,*

650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied,* 455 U.S. 1023 (1982).

### a.  Proper Forum/Proceeding

Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32."  *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir. 1994).   Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court.  This is true even where alternative avenues of reviewing constitutional issues are still available in state court.  *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).  "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir.1999)).

### b.  Fair Presentment

To result in exhaustion, claims must not only be presented in the proper forum, but must be "fairly presented."  That is, the petitioner must provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim.  28 U.S.C. § 2254;  *Picard v. Connor,* 404 U.S. 270, 276-277 (1971).  A claim has been fairly presented to the state's highest court if the petitioner has described both the operative facts and the federal legal theory on which the claim is based.  *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003) (overruled on other grounds, *Robbins v. Carey*, 481 F.3d 1143, 1149 (9th Cir. 2007)).

### c.  Application to Petitioner's Claims

Ground 1 - Recorded Statement - For his Ground 1 for relief, Petitioner argues he

6

was denied a fair trial in violation of his Fifth and Fourteenth Amendment rights thorough admission of Petitioner's recorded statements. (Petition, Doc. 1 at 6.) Respondents concede that the factual allegations underlying this claim were presented to the Arizona Court of Appeals in Petitioner's Supplemental Brief, but argue that it was not fairly presented as a federal constitutional claim. (Answer, Doc. 12 at 11.) Respondents conceded that Petitioner made "a broad reference to the Fifth and Fourteenth Amendments," but argue that was not sufficient to alert the state courts to the substance of his federal claim. (*Id.*)

Petitioner asserted:

> Just prior to trial, defense counsel learned that the prosecution was going to play a tape-recorded interview of Appellant wherein he opined that guns he had previously purchased on the streets were probably stolen.

(Exhibit L, Supp. Br. at 3.)

It is not enough, however, to assert the same facts. Rather, to have fairly presented his claim, "the petitioner must have either referenced specific provisions of the federal constitution or cited to federal or state cases involving the legal standard for a federal constitutional violation." *Castillo v. McFadden,* 399 F.3d 993, 999 (9th Cir. 2005).

In arguing this claim to the Arizona Court of Appeals, Petitioner stated:

> Appellant contends that the prejudicial affect [sic] of the statements substantially out-weighed their probative value and served to mislead the jury. *See* Rule 403, Ariz. R. Evid., 17 A.R.S. As a result, he was denied a fair trial in violation of the Fifth and Fourteenth Amendments.

(*Id.*)

In *Castillo,* the court found a lack of fair presentation where the petitioner had

7

simply argued  that "'[b]ecause this improper evidence was admitted, Appellant was denied a fair trial in violation of the  United States and the Arizona Constitutions.' "  399 F.3d at 1000-1001.  The court found it inadequate because "[i]t did not reference, as we require, any specific provision of the U.S. Constitution on which he rested his claim."  *Id.* at 1001.

Here, in contrast, Petitioner did not simply assert a vague constitutional right, but explicitly referenced the Fifth and Fourteenth Amendments in support of his claim. Respondents make no suggestion what further reference was necessary to alert the state courts to the constitutional nature of his claims.  For example, Respondents do not assert that the Arizona Constitution's Fifth and Fourteenth Amendments would somehow relate to the facts, such that the intent to reference the U.S. Constitution would have been unclear. Indeed, amendments to the Arizona Constitution are not separately enumerated, but are engrossed in the original Articles.

In support of their assertion that Petitioner's explicit references were inadequate, Respondents cite *Fields v. Waddington*, 401 F.3d 1018, 1021 (9th Cir. 2005), and *Rose v. Palmateer*, 395 F.3d 1108, 1111 (9th Cir. 2005).  (Answer, Doc. 11 at 11.)   However, in *Fields*, the petitioner had not referenced any particular constitutional provision, but had simply raised "broad constitutional principles" such as "fair trial" or "due process." *Fields*, 401 F.3d at 1022.   Here, however, Petitioner explicitly referenced the constitutional provisions.

In *Rose*, the Petitioner had asserted to the state courts an ineffective assistance of counsel claim founded upon a failure to raise a number of issues.  The Ninth Circuit found that this was insufficient to fairly present Petitioner's Fifth Amendment Claim, which was only one of several listed claims not raised by trial and appellate counsel.

Here, Petitioner does not seek to raise a claim merely subsumed in a separate ineffectiveness claim, but the same claim under the same constitutional provisions assert to the state courts.

Respondents point to the fact that the state court disposed of the claim only on state law grounds.  While a state court's actual consideration of a federal claim may result in exhaustion, *see Sandstrom v. Butterworth*, 738 F.2d 1200, 1206 (11th Cir.1984) ("[t]here is no better evidence of exhaustion than a state court's actual consideration of the relevant constitutional issue"), the state court's actual consideration of a claim is not necessary to a finding that it was fairly presented. "Failure of a state appellate court to mention a federal claim does not mean the claim was not presented to it."  *Dye v. Hofbauer,* 546 U.S. 1, 3 (2005).  "It is too obvious to merit extended discussion that whether the exhaustion requirement of 28 U.S.C. § 2254(b) has been satisfied cannot turn upon whether a state appellate court chooses to ignore in its opinion a federal constitutional claim squarely raised in petitioner's brief in the state court." *Smith v. Digmon,* 434 U.S. 332, 334 (1978).

The undersigned finds the federal claims in Ground One of Petitioner's Petition were fairly presented and properly exhausted.

Ground 2: Victim's Hearsay - Respondents concede that Ground 2 was fairly presented and Petitioner's state remedies properly exhausted.

Ground 3: Confrontation - For his Ground 3, Petitioner argues that insufficient evidence supported his conviction in violation of his Fifth and Fourteenth Amendment rights, as established by the not-guilty verdict on the armed robbery charge.  Without explanation, Respondents argue this claim was not presented as a federal claim.  However, Petitioner cited to the leading federal cases on insufficient evidence, including

9

*In re Winship*, 397 U.S. 358, 364 (1970) (Fourteenth Amendment's "Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"), and *Jackson v. Virginia*, 443 U.S. 307, 316 (1979) ("*Winship* presupposes as an essential of the due process guaranteed by the Fourteenth Amendment that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof-defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense").  (Exhibit L. Supp. Br. at 4-5.)

"A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief ... by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.' " *Baldwin v. Reese*, 541 U.S. 27, 32(2004).

The undersigned finds the federal claims in Ground Three of Petitioner's Petition were fairly presented and properly exhausted.

Ground 4: Juror's Knowledge of Scene - For Ground 4 of his Petition, Petitioner asserts the violation of his Fifth, Sixth, and Fourteenth Amendment rights to a unanimous verdict as a result of the jury instruction precluding a juror from considering personal knowledge of the liquor store scene.  In his brief to the Arizona Court of Appeals, Petitioner argued:

> Appellant contends the trial court's words instructing Juror #3 not to consider her personal experience in assessing his defense and the facts of the case violated his right to a unanimous jury, in violation of the Fifth, Sixth and Fourteenth Amendments.

(Exhibit L, Supp. Br. at 5.)

Again, Respondents argue that Petitioner's references to the specific constitutional provisions on which he now relies was inadequate to apprise the state courts of the federal nature of his claims.  Respondents are in error.  *Castillo,* 399 F.3d at 999.

The undersigned finds the federal claims in Ground Four of Petitioner's Petition were fairly presented and properly exhausted.

**d.  Summary Re Exhaustion** – Based upon the foregoing the undersigned finds that all of Petitioner's grounds for relief were fairly presented to the Arizona Court of Appeals and his state remedies properly exhausted.

## B. MERITS OF GROUND ONE: PETITIONER'S RECORDED STATEMENTS

For his Ground One for relief, Petitioner argues he was denied a fair trial in violation of his Fifth and Fourteenth Amendment rights thorough admission of his recorded statement in which he "admitted the gun in his car might have been stolen" (Exhibit M, Mem. Dec. at 5), on the basis that the prejudicial effect of the statements outweighed their probative value.  (Petition, Doc. 1 at 6.)

Respondents argue that the Arizona Court of Appeals properly concluded that Petitioner's statements were admissible under Arizona Rule of Evidence 403, and that in any event Petitioner asserts nothing more than a violation of state evidentiary law, which is insufficient to make out a federal constitutional claim.

To the extent that Petitioner simply contends that the Arizona Court of Appeals improperly applied state law, he fails to set out a cognizable claim.  A state court determination of state law is not subject to review in a federal habeas court.  *Bains v. Cambra,* 204 F.3d 964, 971 (9th Cir. 2000) ("federal court is bound by the state court's interpretations of state law").

11

> A federal habeas court, of course, cannot review questions of state evidence law. On federal habeas review, we may consider only whether the petitioner's conviction violated constitutional norms. Even where it appears that evidence was erroneously admitted, a federal court will interfere only if it appears that its admission violated fundamental due process and the right to a fair trial.

*Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999).

Petitioner does not suggest why the admission of this evidence violated fundamental due process and the right to a fair trial, beyond his simple argument that its prejudicial effect outweighed its probative value.  He raised the same terse argument before the Arizona Court of Appeals.  (Exhibit L, Supp. Brief at 3.).

Presumably, Petitioner is concerned that the jury would improperly make an inference that his possession of a stolen gun was evidence by itself of his guilty of the charges.  However, as recognized by the Arizona Court of Appeals, there was another, permissible inference from the statement.

> At trial, just before the videotape was played for the jury, [Detective] Gamez testified a kidnapper may want to use a stolen gun because such a weapon cannot be traced. Accordingly, the superior court found Villa's interview statement was probative of intent and also that it was not "unfairly prejudicial." We conclude the court did not abuse its discretion in so ruling.

(Exhibit M, Mem. Dec. at 6.)  Petitioner offers nothing to suggest that this conclusion was not supported by the record.

The existence of that permissible influence precludes the finding of a denial of due process.

> Only if there are no permissible inferences the jury may draw from the evidence can its admission violate due process. Even then, the evidence must "be of such quality as necessarily prevents a fair trial." Only under such circumstances can it be inferred that the jury must have used the evidence for an improper purpose.

*Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991) (citations omitted).  *See also*

12

1   *Estelle v. McGuire*, 502 U.S 62 (1991) (admission of relevant evidence not a violation of

2   due process, even if prejudicial).

3           Accordingly, Ground One is without merit and must be denied.

4

5

6   **C. MERITS OF GROUND TWO: VICTIM HEARSAY**

7           For his Ground Two for relief, Petitioner argues his right to confront witnesses

8   under the Sixth Amendment was violated by admission of testimony by Phoenix Police

9   Department volunteer Yepez ["Lopez"][1] about the victim's statements.  Petitioner argues

10  that Yepez testified that the victim "had told him that he was terrified and scared over all

11  that had happened."  (Petition, Doc. 1 at 7.)

12

13          Respondents counter that under *Crawford v. Washington*, 541 U.S. 36 (2004),

14  only testimonial statements are barred under the Confrontation Clause, and that the

15  statements by the victim to volunteer Lopez were not testimonial.   Moreover,

16  Respondents contend that Lopez never testified about statements from the victim, but

17  rather only his observations of the victim.  (Answer, Doc. 11 at 15-16.)

18

19          **Victim's Statements Were Testimonial** - In *Crawford*, the Court clarified that

20  the Confrontation Clause was not concerned with all hearsay, but only with *ex parte*

21  "testimony."   The Court acknowledged that "testimony" might occur before a police

22  officer, as well as in a courtroom, but testimony was not the result of every encounter

23  with police officers.  Rather, testimony was derived from "interrogations."  541 U.S. at

24  52-53.

25

26          In *Davis v. Washington*, 547 U.S. 813 (2006), the Court was required to apply its

27

28  ---
    [1] The police department volunteer is identified in the transcript as "Frank Lopez" and as
    "Frank Yepez".  (Exhibit C, R.T. 2/28/08 at 3, 7.)

decision in *Crawford* to a victim's 911 call.  Because the call was in the midst of the attack and "its primary purpose was to enable police assistance to meet an ongoing emergency" rather than simply to collect facts to identify a perpetrator and further a prosecution, the statements were not "testimony."  However, once the perpetrator had left, and the 911 operator continued to "pose a battery of questions," the interchange became "interrogation."  *Id.* at 828-829,

Recently, in *Michigan v. Bryant*, 131 S. Ct. 1143 (2011), the Court further explained that determining whether an interchange with officials had the "primary purpose of interrogation" requires an "objective analysis of the circumstances of the encounter and the statements and actions of the parties to it."  *Id.* at 1156.  In making that determination "the existence of an 'ongoing emergency' at the time of an encounter between an individual and the police is among the most important circumstances informing the 'primary purpose' of an interrogation."  *Id.* at 1157.  The Court noted that an interchange may transform from response to emergency to interrogation "if a perpetrator is disarmed, surrenders, is apprehended, or as in *Davis*, flees with little prospect of posing a threat to the public."  *Id.* at 1159.

The *Bryant* Court also identified the "informality" of the questioning as a relevant factor, and contrasted the questioning in that case "in an exposed, public area, prior to the arrival of emergency medical services, and in an disorganized fashion" with the "formal station-house interrogation in *Crawford*."  *Id.* at 1160.

Here, Yepez's questioning of the victim is the equivalent of the second half of the 911 call in *Davis*.  Officer Matthews testified that he was the first responder, and he had handcuffed everyone in the vehicle upon pulling it over.  (Exhibit B, R.T. 2/27/08 at 81, 88.)  Officer Miller testified that Petitioner was the first person removed from the vehicle

14

(even before the victim) and was immediately placed in custody. (*Id.* at 104.)   Yepez testified that his questioning of the victim occurred "possibly ten minutes after…the vehicle was pulled over."  (Exhibit C, R.T. 2/28/08 at 9.)  Thus, the victim's statement were made after the perpetrator's had been detained, and no emergency was continuing. Although perhaps not conducted with the formality of a station house interrogation, there is no indication of a disorganized questioning in the confusion of the moment. Moreover, Yepez testified that his questioning of the victim was "about what happened." (*Id.* at 8.)   Thus, considering all the circumstances, it is clear the statements were intended to relate the then past events, were "testimonial" and subject to the confrontation clause.

**Introduction of Testimony** - The Arizona Court of Appeals determined that Yepez's testimony "did not constitute hearsay because he did not recount any statement made by the victim."  (Exhibit M, Mem. Dec. at 7.)  However, the record could be read to the contrary:

> Q And did you speak to the victim because you are fluent in Spanish?
> A Yes, I did.
> Q And was that victim's name Simon Arenas Rio?
> A Yes, sir.
> Q And I am not going to ask you any of the contents of the conversation. You did ask him about what happened?
> A Yes, I did, sir.
> Q And how would you describe him that night, was he afraid or scared or anything?
> A He was terrified, scared. And, you know, overall that happened, you know, speaking to the victim was -- he was extremely scared about the whole situation.
> MR. MAYER: All right, thank you. Nothing further.

(Exhibit C, R.T. 2/28/08 at 8.)  The witness's statement "…speaking to the victim was - - he was extremely scared" could be construed as testimony as to the victim's statements

to Yepez.

However, there is a well established presumption of correctness of state court findings of fact.  This presumption has been codified at 28 U.S.C. § 2254(e)(1), which states that "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner has the burden of proof to rebut the presumption by "clear and convincing evidence."[2]   The undersigned cannot find that the interpretation of Yepez's testimony as a relation of Yepez's observations, as opposed to a relation of the victim's statements, has been shown by clear and convincing evidence to be incorrect.  The record reasonably admits of both interpretations.  Even if the undersigned might be inclined to find that the record leans more towards a finding that the testimony was hearsay, the degree of tilt would not begin to approach "clear and convincing."

Accordingly, Petitioner has failed to show that the testimony was a violation of the Confrontation Clause, and his Ground Two must be denied.


## D.  MERITS OF GROUND THREE: INSUFFICIENT EVIDENCE

For his Ground Three for relief, Petitioner argues that insufficient evidence supported his conviction in violation of his Fifth and Fourteenth Amendment rights, as established by the not-guilty verdict on the armed robbery charge.  Petitioner argues that the armed robbery allegations were "an essential element of kidnapping, therefore the acquittal on that charge rendered the remaining evidence insufficient to uphold the kidnapping conviction."  He further argues that without the wrongly admitted hearsay

---

[2] Because the Arizona Court of Appeals did not address the merits of Petitioner's Sixth Amendment Claim, this Court does not apply the prescription in 28 U.S.C. § 2254(d)(2) that a grant of habeas relief must be limited to decisions on the merit that are "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding".  The presumption of correctness of factual determinations applies despite the absence of a decision on the merits of the federal claim.

1   testimony of the victim addressed in Ground Two, there was insufficient evidence to

2   convict him on the assault charge.  (Petition, Doc. 1 at 8.)

3        Respondents argue that the Arizona Court of Appeals found that the armed

4   robbery was not an element of the kidnapping offense, but that it was sufficient to

5   produce evidence that Petitioner's "conduct in restraining the victim with the intent to

6   place him 'in reasonable apprehension of imminent physical injury' constituted

7   kidnapping."  (Exhibit M, Mem. Dec. at 8, quoting Ariz. Rev. Stat. §   13-1304(A)(4)(

8

9   (Supp. 2008).)  Respondents argue that under the standard in *Jackson v. Virginia*, 442

10  U.S. 307, 319 (1979), this Court must view the evidence in the light most favorable to

11  the prosecution, as well as under the deferential standards applicable to state habeas

12  cases under 28 U.S.C. § 2254.  (Supp. Answer, Doc. 15 at 5-7.)

13

14       **Proof of Robbery Not Required** - With regard to the armed robbery acquittal,

15  Petitioner's argument is foreclosed by the holding of the Arizona Court of Appeals that

16  commission of the armed robbery was not necessary to satisfy the elements of the crime

17  of kidnapping under Arizona law.  As noted above, a state court determination of state

18  law is not subject to review in a federal habeas court.  *Bains*, 204 F.3d at 971.

19

20       **Exclusion of Yepez Testimony Not Required** - With regard to the testimony by

21  Yepez, for the reasons discussed hereinabove, Petitioner has failed to establish that any

22  hearsay testimony was admitted.  Rather, this Court must presume the correctness of the

23  state court's conclusion that Yepez testified only as to his personal observations of the

24  victim.   This Court is simply not free to adopt Petitioner's characterization of the

25  evidence at trial as constituting Yepez testifying "that Rios had told him that he was

26  scared."  (Petition, Doc. 1 at 8.)

27

28       **Direct Proof of Apprehension Not Required** – Nor does Petitioner show that

17

the evidence, viewed as simply a statement of Yepez's observations, was insufficient to show the victim's reasonable apprehension of imminent physical injury.  Petitioner offers nothing to establish that direct testimony of the victim is necessary to establish such apprehension.  Other jurisdictions hold that it does not.

> There is, moreover, no requirement that the victim of an assault actually testify to his or her own state of mind. If the circumstances are such as would ordinarily induce fear in the mind of a reasonable person, then the victim may properly be found to have been in fear.

*L.R..W. v. State*, 848 S.2d 1263 (Fla. App. 2003).  There is nothing in Arizona's statute explicitly requiring such evidence.

Here, there was testimony that the victim was extracted from a vehicle with the perpetrators pointing a gun to his head.  (Exhibit B, R.T. 2/27/08 at 46.)  There is no suggestion that the victim would have had any reason to not feel fear upon this occurrence, e.g. there is no suggestion that he was part of staging a scene, engaging in mutual horseplay, etc. That evidence was sufficient to establish that the victim was in apprehension of harm.

Accordingly, Petitioner's Ground Three is without merit.


**E.  MERITS OF GROUND FOUR:  JUROR'S KNOWLEDGE OF SCENE**

For his Ground Four for relief, Petitioner argues that he suffered a violation of his Fifth, Sixth, and Fourteenth Amendment rights to a unanimous verdict as a result of the jury instruction precluding a juror from considering personal knowledge of the liquor store scene. (Petition, Doc. 1 at 9.)

Respondents argue that the constitution does not require that jurors be permitted to consider such extrinsic evidence.  (Supp. Answer, Doc. 15 at 7-8.)  Respondents also

argue that Petitioner provides no basis for finding that the juror ignored the instruction to disregard the personal knowledge. (*Id.* at 8.) However, the undersigned does not understand Petitioner to argue that the instruction wasn't followed, but rather that it should not have been given.

Petitioner points to no authority (and certainly no Supreme Court authority) holding that a defendant has a right to allow jurors to consider their extrinsic knowledge about the alleged crime, whether it be knowledge of events, persons or places. The located Supreme Court jurisprudence suggests that a limiting instruction may properly be employed.

> In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors…a juror must be as 'indifferent as he stands unsworne.' His verdict must be based upon the evidence developed at the trial.

*Irvin v. Dowd,* 366 U.S. 717, 722 (1961). While "[i]t is not required…that the jurors be totally ignorant of the facts and issues involved," *id.*, it may be a denial of an impartial jury when such personal knowledge is injected into the juries' deliberations, *id.* at 723.

The Ninth Circuit has observed:

> The Sixth Amendment entitles a defendant to an "impartial" jury, not to an ignorant one…That is not to say that all juror experience is proper grist for the deliberative mill.

*Grotemeyer v. Hickman*, 393 F.3d 871, 879 (9ᵗʰ Cir. 2004). *See also Personal values or knowledge of jurors—Consideration or disclosure of jurors' personal experiences*, 75B Am. Jur. 2d Trial § 1416.

Here, Petitioner offers no suggestion that the juror's knowledge of the place of the crime differed from the evidence at trial, rendered that juror biased, or would have otherwise affected that juror's verdict. Moreover, while the introduction of the juror's

19

personal experience may not have amounted to error, that does not mean that its exclusion was error. To the contrary, mandating its consideration would be counter to Petitioner's right to a verdict "based upon the evidence developed at the trial."

Petitioner has failed to offer any basis to find merit in his Ground Four, and the undersigned has found none. Therefore, the claim must be denied.

## F. SUMMARY

Contrary to Respondents' assertions that Grounds 1, 3 and 4 were procedurally defaulted, the undersigned has found they were fairly presented and Petitioner's state remedies properly exhausted. However, each of Petitioner's grounds for relief are without merit and must be denied.

## IV. CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment. The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner. Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability

("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on the merits. Under the reasoning set forth herein, the underlying constitutional claims are plainly without merit, and reasonable jurists would not find the district court's assessment of the constitutional claims debatable or wrong.  Accordingly, a certificate of appealability should be denied.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petitioner's Petition for Writ of Habeas Corpus, filed March 18, 2011 (Doc. 1)  be **DENIED**.

**IT IS FURTHER RECOMMENDED** that to the extent the reasoning of  this Report & Recommendation is adopted, that a certificate of appealability **BE DENIED**.

## VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.   *See also* Rule 10, Rules Governing Section 2255 Proceedings.  Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Pursuant to *Local Civil Rule 7.2(e)(3)*, unless otherwise permitted by the Court, an objection to a Report and Recommendation shall not exceed ten (10) pages.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).


Dated: March 26, 2012

11-0514r RR 12 03 15 on HC.docx

James F. Metcalf
United States Magistrate Judge